JOURNAL ENTRY AND OPINION
Plaintiff law firm Joseph Diemert, Jr. Associates Co., L.P.A. (Diemert), represented Drs. James Bishop and Phillip Suresky in successful breach of contract and fraud actions we will refer to as the Bishop litigation. As part of the judgment, the trial court awarded Diemert $200,000 in attorney fees. When the Bishop defendants were unable to satisfy the judgment, Diemert hired defendant law firm Rubenstein, Novak, Einbund Pavlik (formerly known as Rubenstein, Novak, Einbund, Pavlik Celebrezze) to initiate involuntary bankruptcy proceedings against them. The Bishop plaintiffs' claims in bankruptcy were general unsecured claims and they did not receive any funds after secured claims were satisfied. Diemert's attorney fees in the Bishop action likewise went unsatisfied. Rubenstein, Novak, Einbund, Pavlik Celebrezze did, however, receive payment for its bankruptcy work. Diemert filed this breach of contract action against Rubenstein, Novak, Einbund, Pavlik Celebrezze claiming he acted as co-counsel in the bankruptcy case and should receive a portion of the bankruptcy attorney fees. Rubenstein, Novak, Einbund Pavlik filed a motion for summary judgment in which it argued that Diemert's attorney fees arose solely from the Bishop judgment, not through a co-counsel agreement in the bankruptcy case. The court granted Rubenstein, Novak, Einbund, Pavlik Celebrezze's motion for summary judgment. Rubenstein, Novak, Einbund, Pavlik Celebrezze has not filed an appellee's brief.
Because the court resolved this case by summary judgment, we view the facts in a light most favorable to Diemert. See Civ.R. 56(C). Those facts are largely contained in Diemert's answers to interrogatories. The Bishop litigation involved a claim of fraud relating to cattle investment programs. A jury found for the Bishop plaintiffs, awarding them compensatory and punitive damages. The trial court reserved for later determination the issue of attorney fees, and later made the following ruling:
 Having specifically reserved the issue of attorneys' fees in this case, and after considering the hours spent, the effort expended, the complexity of the issues involved, the expertise demonstrated, and the results obtained, the Court awards to the plaintiffs and against all the defendants, jointly and severally, the sum of Two Hundred Thousand Dollars ($200,000) as reasonable attorneys' fees and as part and parcel of the punitive damages award.
It appearing that the Bishop defendants had substantial assets in several states, Diemert instituted a third party bankruptcy case in order to prevent the Bishop defendants from depleting or transferring assets. Because he claimed a lack of expertise in bankruptcy matters, Diemert said he contacted Rubenstein, Novak, Einbund Pavlik to assist in collecting the judgment.
Diemert alleged he retained Rubenstein, Novak, Einbund, Pavlik Celebrezze on behalf of the Bishop defendants in a co-counsel capacity and in his own interest. The co-counsel capacity entailed his performance as special counsel in bankruptcy proceedings related to the Bishop litigation. As proof of this co-counsel relationship, Diemert cited a Rubenstein, Novak, Einbund, Pavlik 
Celebrezze letter to Diemert which twice refers to the Bishop plaintiffs as our clients. In addition, Diemert claimed he performed multiple services as requested by Rubenstein, Novak, Einbund, Pavlik Celebrezze on multiple occasions.
As for being a client of Rubenstein, Novak, Einbund, Pavlik 
Celebrezze, Diemert claimed his $200,000 attorney fee judgment against the Bishop defendants gave him creditor status. Diemert described his agreement with Rubenstein, Novak, Einbund, Pavlik 
Celebrezze as an oral contract which Rubenstein, Novak, Einbund, Pavlik Celebrezze confirmed by subsequent action and correspondence.
Rubenstein, Novak, Einbund, Pavlik Celebrezze's motion for summary judgment argued that Diemert's claim as a creditor of the bankruptcy estate must fail as a matter of law because his entitlement to fees arose from the punitive damages award in the Bishop litigation, and those damages were unsecured, non-dischargeable claims that could not be satisfied by the bankruptcy court. Since the $200,000 judgment for attorney fees had been rendered for the Bishop plaintiffs, not Diemert specifically, Rubenstein, Novak, Einbund, Pavlik Celebrezze concluded that Diemert had no individual claim on the bankruptcy estate.
Beginning first with Diemert's claim that the attorney fees awarded in the Bishop litigation entitled him to proceeds from the bankruptcy estate, we see no material issue of fact because the Bishop plaintiffs had the claim for attorney fees, not Diemert. The trial court's order in the Bishop litigation clearly stated that the Court awards to plaintiffs and against all defendants attorney fees of $200,000 as part of the punitive damages award. (Emphasis added). Since it is conceded there were no funds available to pay the punitive damages award to the Bishop plaintiffs, Diemert can have no personal claim on any bankruptcy proceeds.
As for the claim that Diemert and Rubenstein, Novak, Einbund, Pavlik Celebrezze had a co-counsel arrangement based on an oral contract that was subsequently confirmed by written correspondence, we note that R.C. 2305.07 states that an action upon a contract not in writing must be brought within six years after the cause thereof accrued. Exhibits to Rubenstein, Novak, Einbund, Pavlik 
Celebrezze's motion for summary judgment show that bankruptcy fees were paid on May 26, 1992. Diemert filed his complaint on October 1, 1998, more than six years after the fees were paid. Hence, the statute of limitations would, as a matter of law, bar any claim for breach of oral contract.
Diemert claims Rubenstein, Novak, Einbund, Pavlik Celebrezze confirmed the oral contract in subsequent writings that referred to our clients. The context of the phrase our clients does not necessarily indicate that Rubenstein, Novak, Einbund, Pavlik 
Celebrezze had been referring to joint representation. It is just as likely that Rubenstein, Novak, Einbund, Pavlik Celebrezze had been referring to itself in the plural, as members of multiple attorney law firms sometimes do. Nevertheless, because Diemert is the non-moving party, he is entitled to all reasonable inferences, so for purposes of this appeal we consider the phrase our clients to refer to Diemert and Rubenstein, Novak, Einbund, Pavlik 
Celebrezze.
Unfortunately for Diemert, this favorable inference has no positive consequence for him. In First National Securities Corp. v. Hott (1954), 162 Ohio St. 258, 262, the Ohio Supreme Court stated, [u]nder no statute does a written memorandum which merely evidences an oral contract convert such oral contract into a contract in writing. In Thomas H. Jacoby Assocs., Inc. v. Jednak Floral Co. (Nov. 7, 1991), Franklin App. No. 90AP-1228, unreported, the court of appeals explained this principle by saying, * * * where a writing of one party merely memorializes that party's understanding of an oral contract, the contract remains an oral contract, not a written contract.
We construe contracts as a matter of law. Latina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214. The evidence, taken in a light most favorable to Diemert shows the existence of an oral contract memorialized by the Rubenstein, Novak, Einbund, Pavlik Celebrezze letter referring to our clients. This letter does not convert the oral contract into a written contract.
Finally, we consider Diemert's claim that he was an intended third party beneficiary of the attorney-client relationship between the Bishop plaintiff's and Rubenstein, Novak, Einbund, Pavlik 
Celebrezze. Diemert claims the Bishop plaintiffs entered into an attorney-client relationship with Rubenstein, Novak, Einbund, Pavlik Celebrezze with the intent to benefit Diemert, apparently so Diemert's fees could be paid. See Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 5. Even if we were to assume the Bishop plaintiffs had the intent to benefit Diemert, that assumption does not help Diemert. Rubenstein, Novak, Einbund, Pavlik Celebrezze's attorney fee at the bankruptcy attorney is separate and distinct from the Bishop plaintiffs' attempt to collect monies in bankruptcy to satisfy their punitive damages judgment. Moreover, Diemert's argument assumes that the Bishop plaintiffs intended that all the money they collected from the bankruptcy estate would go first toward satisfying Diemert's claim. It is true that a letter from the son of one of the Bishop plaintiffs stated, my father has consistently described to me a business arrangement whereby your fees would be paid out of the proceeds of the Grdina matter. But this letter does not support the conclusion that the Bishop plaintiffs meant that any money Rubenstein, Novak, Einbund, Pavlik Celebrezze collected from the bankruptcy estate must be ear-marked for Diemert's attorney fees. Diemert's claim for fees is with the Bishop plaintiffs, not with Rubenstein, Novak, Einbund, Pavlik Celebrezze. The assigned errors are overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
 ________________________ JOHN T. PATTON, J.
TIMOTHY E. McMONAGLE, P.J. JAMES D. SWEENEY, J., CONCUR.